FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 03, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMANTHA M.,[1] | No.    4:21-cv-5123-EFS |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Samantha M. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ failed to adequately develop the record regarding Plaintiff's claimed mental impairments, the Court reverses the ALJ's decision and remands this matter for further proceedings.

///

//

/

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

### I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

## II.    Background

In May 2019, Plaintiff filed an application for benefits under Title 16, claiming disability based on attention-deficit/hyperactivity disorder (ADHD), depression, anxiety, shrapnel in her right knee, and foot pain.[8]   Plaintiff alleged an onset date of September 29, 2018.[9]   After the agency denied her applications initially and on reconsideration,[10] Plaintiff requested a hearing before an ALJ.

In October 2020, ALJ Donna Walker held a telephonic hearing through which she heard testimony from medical expert Jay Toews, EdD, Plaintiff, and a vocational expert.[11]   In November 2020, the ALJ issued a written decision denying disability.[12]

//

---

[8] AR 191, 223.

[9] AR 191.

[10] AR 73–83 (initial denial); AR 84–98 (denial on reconsideration).  Although the record contains references regarding Plaintiff transitioning from female to male, Plaintiff consistently uses female pronouns in her briefing. *See generally* ECF Nos. 14, 20.  Based on Plaintiff's apparent pronoun preference—and for the sake of consistency and clarity—the Court uses only female pronouns to refer to Plaintiff. Any misgendering is inadvertent; no disrespect is intended.

[11] AR 38–71.

[12] AR 15–26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 1, 2019, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: adjustment disorder, with anxiety, and personality disorder, unspecified.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform work at all exertional levels but limited to work that is:

    o  simple, routine, and predictable;

    o  commensurate an SVP rating of 2;

    o  free from production quotas,

    o  possibly in proximity to, but not requiring close cooperation with, co-workers and supervisors; and

    o  away from the general public.[13]

- Step four: Plaintiff had no past relevant work.

//

/

---

[13] *See* AR 20.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as assembler, small parts; laundry worker I; and laborer, stores.[14]

In reaching her decision, the ALJ found Dr. Toews' testimony persuasive and relied on it heavily in assessing Plaintiff's mental impairments and related testimony.[15]  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[16]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[17]  Plaintiff then appealed to this Court.

////

///

//

/

---

[14] AR 25.

[15] *See* AR 21–24.

[16] AR 21.

[17] AR 1–6.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

## III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[18] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[19]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]  Because it is the role of the ALJ to weight conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[21]  Further, the Court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination."[22]

---

[18] 42 U.S.C. § 405(g).

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[20] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[21] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[22] *Molina*, 674 F.3d at 1115 (cleaned up).

## IV.    Analysis

Plaintiff argues the ALJ erred by (1) failing to develop the record regarding Plaintiff's diagnosis of autism, (2) improperly discounting Plaintiff's symptom reports, and (3) failing to fully consider the impact of Plaintiff's personality disorder when analyzing the evidence of record.[23]  For the reasons that follow, the Court agrees that the ALJ failed to adequately develop the record regarding Plaintiff's claimed (and seemingly diagnosed) impairment of autism.  And, because that error requires reversal for additional proceedings and a new sequential evaluation, the Court does not reach Plaintiff's other assignments of error.

### A.    Development of the Record: Plaintiff shows reversible error.

Plaintiff first argues that the ALJ failed to adequately develop the record regarding Plaintiff's claimed impairment of autism.[24]  Plaintiff contends that the ALJ should have inquired further regarding autism in light of Plaintiff's pre-hearing brief (in which she asserted autism spectrum disorder as a severe impairment),[25] her testimony regarding autism being the biggest obstacle to employment, her self-reports of being diagnosed with autism as a child, and psychological reports which included autism as a possible diagnosis.

---

[23] *See* ECF No. 14 at 2.

[24] ECF No. 14 at 5–8.

[25] *See* AR 294–95.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    **An ALJ's Duty to Develop the Record**

Although a claimant carries the burden of proving disability in Social Security cases,[26] the ALJ nonetheless "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[27]  To begin with, unless the alleged onset date is less than 12 months before the claimant filed her application, the ALJ in every case is required to develop the claimant's "complete medical history" for "at least" the 12 months preceding the month of filing.[28]  But the ALJ may need to develop the claimant's medical history even further back if "there is a reason to believe that development of an earlier period is necessary."[29]  Similarly, the circumstances of a given case may require additional development of the evidence relating to a particular issue.  "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."[30]

---

[26] 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

[27] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

[28] 20 C.F.R. § 416.912(b)(1).

[29] *Id.*

[30] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). *See also Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the

1

2.    __Dr. Marks' Psychological Evaluations of Plaintiff__

2        As Plaintiff points out, the first discussion of autism in the current record

3    was by psychologist N.K. Marks, PhD, in December 2016, when she included it as a

4    rule-out diagnosis.[31]  It was in December 2016 that Dr. Marks performed her first

5    psychological evaluation of Plaintiff, which included a clinical interview but lacked

6    any records to review.[32]  Dr. Marks expressly labeled autism as a rule-out

7    diagnosis,[33] explaining in her report, "[Plaintiff] has some avoidance features and

8    possible cluster B characteristics.[34]  She may have some autistic tendencies,

9    however, in her inability to read people clearly.  More data would be needed to

10

11

12

_____

13    record further is triggered only when there is ambiguous evidence or when the

14    record is inadequate to allow for proper evaluation of the evidence.").

15    [31] ECF No. 14 at 6 (citing AR 813).

16    [32] AR 810–16.

17    [33] AR 813 ("R/O Autism Spectrum, Level 1").

18    [34] AR 812.  According to the Mayo Clinic, "Cluster B personality disorders are

19    characterized by dramatic, overly emotional[,] or unpredictable thinking or

20    behavior.  They include antisocial personality disorder, borderline personality

21    disorder, histrionic personality disorder and narcissistic personality disorder." _See_

22    https://www.mayoclinic.org/diseases-conditions/personality-disorders/symptoms-

23    causes/syc-20354463 (accessed Feb. 24, 2023).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

diagnose."[35]  Dr. Marks further explained, "[Plaintiff] presents with a myriad of symptoms and observations over time will help clarify diagnosis."[36]  Dr. Colby, a state-agency psychologist, reviewed and agreed with Dr. Marks' December 2016 report, including the rule-out diagnosis of autism spectrum disorder.[37]

In December 2017, Dr. Marks evaluated Plaintiff a second time, with Plaintiff endorsing the same symptoms as the year before.[38]  Plaintiff further reported that she was diagnosed with autism in school, but that when she transferred schools, her new school "did not carry that diagnosis through."[39]  Dr. Marks noted under the treatment-history portion of her report that "[Plaintiff] still has many problems dealing with others, considerable anxiety[,] and has little idea of what is expected of her."[40]  Then, in her clinical findings regarding autism, Dr. Marks noted, "*Records pending*.  [Plaintiff] presents with social[ly] awkward behavior, poor social understanding, limited insight, immaturity, significant social anxiety.  She is somewhat literal, has constricted affect, little sense of humor,

---

[35] AR 812.

[36] AR 814.

[37] AR 808–09.

[38] AR 817–22.

[39] AR 818.

[40] AR 818.

1    avoids others.  She reports that she was in life skills due to her poor social skills

2    and academics, diagnosed with autism in [grade school]."[41]

3         Under diagnoses, Dr. Marks no longer attached the "rule-out" qualifier to

4    the autism diagnosis; nor did she otherwise expressly label it as a "provisional" or

5    "differential" diagnosis.  Rather, Dr. Marks wrote, "Autism spectrum disorder—

6    *further assessment is planned*."[42]  And, under the prognosis/plan portion of her

7    report, Dr. Marks explained, "*Records have been requested* from her past schools

8    regarding autism diagnosis.  She presents as socially awkward today, somewhat

9    literal, reports high levels of social anxiety and poor social understanding.  *A full*

10   *assessment is recommended* to determine cognitive levels, document autism

11   symptoms."[43]

12        The record lacks any indication as to whether the "full assessment"

13   recommended by Dr. Marks ever took place or, if so, what the assessment says

14   regarding Plaintiff's claim of autism as a medically determinable impairment.  The

15   same is true regarding the school records that Dr. Marks requested.  However,

16   when state-agency consulting psychologist Luci Carstens, PhD, PS, reviewed

17

18   _____

19   [41] AR 819 (emphasis added). *See also* AR 818 (noting Plaintiff presented "as very

20   literal, no sense of humor").

21   [42] AR 819 (emphasis added).  Dr. Marks also included other diagnoses that are not

22   relevant for purposes of the Court's decision.

23   [43] AR 820–21 (emphasis added).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

Dr. Marks' December 2017 report, Dr. Carstens opined that the diagnosis of "an autism spectrum disorder" was supported by available objective medical evidence.[44] Dr. Carstens did not appear to treat the autism diagnosis as still being limited to a rule-out diagnosis.

### 3.  **Dr. Toews' Testimony**

At the hearing, Dr. Toews—on whom the ALJ relied extensively throughout her decision—testified first.  Dr. Toews said that based on his review of the records, Plaintiff's psychological issues appeared to be mostly "adjustment related problems," and Dr. Toews opined that "the most correct diagnosis would be an adjustment disorder with anxiety."[45]

Notably, in reviewing the medical evidence, Dr. Toews credited Dr. Marks as giving one of the two best psychological evaluations in the record.[46]  And Dr. Toews commented only briefly on the subject of autism.  Dr. Toews observed, "Dr. Mark[s] felt [Plaintiff] had avoidant personality features and raised a question as to whether or not there might be some kind of signs of autism and some kind of signs

---

[44] *See* AR 823. Dr. Carstens also explained that Dr. Colby's December 2016 review of medical evidence similarly reflected such a diagnosis. *See* AR 823.

[45] AR 46.

[46] AR 46–47.

1

2

3

of ADHD."[47]  But Dr. Toews gave no additional information or analysis regarding autism or ADHD and simply noted, "Those were not confirmed.  There was no further testing."[48]

4

5

6

7

8

9

10

The ALJ did not inquire further with Dr. Toews regarding autism, its signs and symptomology, or whether a confirmed diagnosis would alter his analysis of the available evidence.  According to the Listings, the signs and symptoms of autism spectrum disorder can include "behavioral difficulties, including hyperactivity, short attention span, impulsivity, aggressiveness, or self-injurious actions."[49]  And much of the record reflects Plaintiff exhibiting behavior that—at least arguably—matches those symptoms.[50]  Lacking any discussion by Dr. Toews,

11

12

13

14

15

16

[47] AR 47.  *See also* AR 49 (regarding the Listing for autism spectrum disorder, Dr. Toews saying, "I think . . . there is insufficient evidence.  There was no follow up to the diagnosis under that category.").

17

18

19

[48] AR 47.  *See also* AR 49 (regarding the Listing for autism spectrum disorder, Dr. Toews saying, "I think . . . there is insufficient evidence.  There was no follow up to the diagnosis under that category.").

20

[49] Listing 12.00(B)(8), 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

21

22

23

[50] *See, e.g.*, AR 377–402 (inpatient treatment for suicidal ideation); AR 497 (noting "reckless behavior of writing on her doors"); AR 596 (Plaintiff reporting poor concentration and increased anger and irritability, stating that "any little thing"

1    or any other evidence to inform the issue, it is unclear whether a confirmed

2    diagnosis of autism would have altered any of Dr. Toews' opinions, particularly his

3    opinion that much of Plaintiff's problems were "due to motivation and

4    noncompliance, not any mental illness," and that she "would be highly responsive

5    to a behavior modification program."[51]

6    ####    4.    **Plaintiff's Testimony**

7         After Dr. Toews concluded and hung up, Plaintiff presented testimony.  The

8    ALJ started by asking Plaintiff for her name, date of birth, education, and recent

9    work history.  Plaintiff's counsel then proceeded to ask Plaintiff about her claimed

10   impairments.[52]  Although Plaintiff also described suffering from social anxiety,

11   depression, and ADHD, she testified that autism was "the main reason" why she

12   could not work.[53]  Plaintiff did not elaborate on her autism symptoms or how

13   autism specifically limited her ability to work.  Yet, the ALJ never asked Plaintiff

14   any clarifying questions about autism or why she believed it to be her most

15   significant impairment.  Indeed, after asking the basic introductory questions, the

16   ALJ did not ask Plaintiff any follow-up questions at all.

17

18   _____

19   will cause her to "lose [her] cool" and she will scream at others.); AR 860 ("Sores on

20   arms from picking at skin.").

21   [51] AR 50, 54.

22   [52] AR 57–64.

23   [53] AR 59–61.

1

### 5.    <u>The ALJ's Finding</u>

2

In rejecting autism as a medically determinable impairment, the ALJ stated:

3

4

5

6

7

[A]lthough the claimant testified at the hearing to being most limited in terms of her ability to work by autism, and that difficulty with treatment compliance has been limited by an attention deficit disorder, these and other mental impairments mentioned in the medical evidence of record are found to be non-medically determinable.  Along these lines, consistent with Dr. Toews's hearing testimony, it appears that autism and an attention deficit disorder, have been specifically identified by other psychologists as constituting only rule out diagnoses *with further assessment needed.*"[54]

8

9

10

11

12

13

14

15

16

But, given the change in Dr. Marks first expressly labeling autism as a rule-out diagnosis and then omitting any such label in her second report, as well as Dr. Carstens' endorsement of a qualifier-free diagnosis of "an autism spectrum disorder," there is good cause to question whether autism was truly just included as a rule-out diagnosis.  More, even assuming the ALJ reasonably interpreted the autism diagnoses as "constituting only rule out diagnoses," the ALJ's own finding seemingly acknowledged that "further assessment" was necessary before the ALJ could properly determine whether Plaintiff had autism (and/or ADHD) as medically determinable impairments.

17

18

19

20

Additionally, Dr. Toews never gave an opinion as to whether Plaintiff truly has autism; Dr. Toews merely indicated that the question was raised but never answered—in other words, that the record remained ambiguous on that issue.  Based on the combination of Dr. Toews' testimony, Dr. Marks' psychological

21

22

23

_____

[54] AR 18 (emphasis added) (citing AR 808, 813, 819).

1  evaluations, Dr. Carstens' reviewing opinion, Plaintiff's pretrial briefing, and

2  Plaintiff's hearing testimony, the ALJ should have been alerted to the need to

3  inquire further before rejecting autism as a medically determinable impairment.[55]

4  After all, "it is incumbent upon the ALJ to scrupulously and conscientiously probe

5  into, inquire of, and explore for all the relevant facts.  [S]he must be especially

6  diligent in ensuring that favorable as well as unfavorable facts and circumstances

7  are elicited."[56]

8  ### 6.    **Reversible Error**

9      Due to a noted lack of medical evidence, the current record remains

10  ambiguous as to whether Plaintiff has autism.[57]  The ALJ therefore erred by failing

11  to adequately develop Plaintiff's "complete medical history, including arranging for

12  a consultative examination(s) if necessary, and making every reasonable effort to

13  help [her] get medical reports from [her] own medical sources," before determining

14  that she was not disabled.[58]

---

[55] *See Webb*, 433 F.3d at 687; *Mayes*, 276 F.3d at 459–60.

[56] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).

[57] *See Webb*, 433 F.3d at 687 ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when h[er] conclusion is 'clearly established by medical evidence.'" (quoting SSR 85-28)).

[58] 20 C.F.R. § 416.945(a)(3).

1       Errors by an ALJ at step two of the evaluation process are frequently

2   deemed inconsequential—the idea being that such error "could only have

3   prejudiced [the claimant] in step three (listing impairment determination) or step

4   five (RFC) because the other steps, including this one, were resolved in her

5   favor."[59]  Here, however, neither the ALJ's decision nor the overall record provide a

6   basis for the Court to assess whether, or to what extent, an accurate autism

7   diagnosis might have altered the rest of the sequential evaluation process,

8   including steps three and five.  The Court therefore "cannot conclude that the

9   ALJ's decision was based on substantial evidence that took the totality of

10  [Plaintiff]'s medical condition[s] into account.[60]  The ALJ's error was consequential

11  and warrants reversal.[61]

12  **B.      Remand: Further proceedings are required.**

13      The record does not clearly establish that Plaintiff is disabled, and remand

14  for further proceedings is necessary to further develop the record and to resolve

15

16

17

18

19

20  _____

21  [59] *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

22  [60] *Celaya*, 332 F.3d at 1184.

23  [61] *See Molina*, 674 F.3d at 1115.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

outstanding questions of fact.[62]  Because the new evidence will likely inform nearly every aspect of the ALJ's analysis, a new sequential evaluation is necessary.

On remand, the ALJ shall further develop the record regarding Plaintiff's claimed mental impairments—particularly autism spectrum disorder and ADHD—and then conduct the disability evaluation anew, beginning at step two and subject to the following directions.

1.  The ALJ shall inquire further with Plaintiff regarding her claimed mental impairments, including the related symptoms, behaviors, and/or other limitations.

2.  The ALJ is encouraged to make reasonable efforts to obtain Plaintiff's school records as well as any other records the ALJ believes may inform the analysis regarding Plaintiff's claimed mental impairments, particularly autism.

3.  Unless further development of the record otherwise reveals a psychological evaluation that is adequately on point, supported, explained, and recent, the ALJ shall order a psychological evaluation of Plaintiff that specifically addresses autism spectrum disorder and ADHD as potential diagnoses.

---

[62] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). *See also* ECF No. 14 at 17 (seeking remand for further development of the record).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

4.    Unless it is clear after further development that the evidence does not support autism as a medically determinable impairment, the ALJ shall obtain additional medical-expert evidence from a psychologist regarding the signs and symptoms of autism and explaining what, if any, behaviors exhibited by Plaintiff throughout the record could reasonably be attributed to autism.  At the ALJ's discretion, the ALJ may direct that these issues be expressly addressed as part of the above psychological evaluation, or the ALJ may consult a different psychologist to elicit such evidence.

5.    If the ALJ again discounts Plaintiff's symptom reports, the ALJ must articulate specific, clear, and convincing reasons for doing so.[63]  General findings are insufficient because the Court cannot affirm discounting Plaintiff's symptoms for a reason not articulated by the ALJ.[64]  The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[65]  Additionally, when providing reasons for rejecting Plaintiff's symptom reports, the ALJ should be mindful of the following:

---

[63] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[64] *See Garrison*, 759 F.3d at 1010.

[65] *Ghanim*, 763 F.3d at 1163 (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

a.  "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[66]  Absent additional explanation and/or evidence, a simple failure by the claimant to consistently take prescribed mental-health medications is unlikely to constitute a clear and convincing reason for discounting a claimant's mental-health symptom testimony, especially if such noncompliance or lack of treatment may be attributed to the claimant's mental impairments and/or a lack of access to the treatment in question.[67]

b.  Absent an explanation as to how a claimant's reported activities directly contradict specifically identified symptom testimony, an ALJ may reject such symptom testimony only upon making "specific findings relating to the daily activities and their transferability" to a work setting.[68]

_____

[66] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999).

[67] *See Garrison*, 759 F.3d at 1018 n.24 (Symptom testimony cannot be rejected for lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

[68] *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted

c.    For evidence of successful treatment/improvement to provide a valid basis for rejecting a claimant's mental-health symptom reports, the record must demonstrate that (1) the relief is lasting, and (2) the type and degree of relief are such that it is truly at odds with the symptom reports being rejected.[69]

## V.    Conclusion

Plaintiff establishes the ALJ erred.  The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process as set forth above.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

_____

that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

[69] *See Garrison*, 759 F.3d at 1017–18; *see also Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998)).

1    4.    The decision of the ALJ is **REVERSED** and this matter is

2    **REMANDED** to the Commissioner of Social Security for further

3    proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4    ////

5    ///

6    //

7    /

8    5.    The case shall be **CLOSED**.

9    IT IS SO ORDERED. The Clerk's Office is directed to file this order and

10    provide copies to all counsel.

11    DATED this 3rd day of March 2023.

12

_Edward F. Shea_

13    EDWARD F. SHEA
Senior United States District Judge

14

15

16

17

18

19

20

21

22

23